# EXHIBIT B



CORPORATION SERVICE COMPANY®

# Notice of Service of Process

null / ALL
**Transmittal Number: 13136260**
**Date Processed: 11/05/2014**

| | |
|---|---|
| **Primary Contact:** | Rita Mennen<br>CNO Financial Group, Inc.<br>11825 N. Pennsylvania Street<br>Carmel, IN 46032 |

| | |
|---|---|
| **Entity:** | Conseco Health Insurance Company<br>Entity ID Number  2425608 |
| **Entity Served:** | Conseco Health Insurance Company, A Member of CNO Services LLC |
| **Title of Action:** | Roger Combs vs. Conseco Health Insurance Company, a Member of CNO Services, LLC |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Leslie County Circuit Court, Kentucky |
| **Case/Reference No:** | 14-CI-00183 |
| **Jurisdiction Served:** | Kentucky |
| **Date Served on CSC:** | 11/04/2014 |
| **Answer or Appearance Due:** | 20 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Certified Mail |
| **Sender Information:** | Cheryl U. Lewis<br>606-672-4200 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

*CSC is SAS70 Type II certified for its Litigation Management System.*

2711 Centerville Road  Wilmington, DE 19808   (888) 690-2882   |   sop@cscinfo.com

| AOC-105      Doc. Code: CI | | Case No. | *14-CI-00183* |
|---|---|---|---|
| Rev. 1-07<br>Page 1 of 1<br>Commonwealth of Kentucky<br>Court of Justice    www.courts.ky.gov<br>CR 4.02; CR Official Form 1 | **CIVIL SUMMONS** | Court | ☑ Circuit ☐ District |
| | | County | Leslie |

**PLAINTIFF**

ROGER              COMBS

120 HEAVENS VIEW

HINDMAN        Kentucky       41822

**VS.**

**DEFENDANT**

CONSECO HEALTH INSURANCE COMPANY, A MEMBER OF CNO SERVICES LLC

11825 N. PENNSYLVANIA STREET

CARMEL        Indiana       46032

**Service of Process Agent for Defendant:**
CSC LAWYERS INCORPORATING SERVICE COMPANY

421 WEST MAIN STREET

FRANKFORT                 Kentucky      40601

**THE COMMONWEALTH OF KENTUCKY**
**TO THE ABOVE-NAMED DEFENDANT(S):**

       You are hereby notified a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf** within **20 days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached Complaint.

       The name(s) and address(es) of the party or parties demanding relief against you are shown on the document delivered to you with this Summons.

Date: _10 - 29_ , 20_14_      *Carmalitta Morgan-Pace* _Clerk

                             By: _____ _D.C.

---

**Proof of Service**

This Summons was served by delivering a true copy and the Complaint (or other initiating document) to:

_____

this _____ day of _____, 2_____.

                     Served by: _____

                     _____Title

COMMONWEALTH OF KENTUCKY
LESLIE CIRCUIT COURT
CIVIL ACTION NO. 14-CI-00183

ROGER COMBS                  PLAINTIFF

FILED 29
NOTED OF RECORD THIS
DAY OF ___ OCT ___, 20 14
LESLIE CIRCUIT/DISTRICT COURT CLERK
BY: ___ D.C.

VS.

CONSECO HEALTH INSURANCE COMPANY,      DEFENDANT
A Member of CNO SERVICES, LLC

Serve:   CSC—LAWYERS INCORPORATING SERVICE COMPANY
        421 WEST MAIN STREET
        FRANKFORT, KENTUCKY  40601

••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

## COMPLAINT

••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

The Plaintiff, ROGER COMBS ("Combs"), via counsel, for his

Complaint against the Defendant, CONSECO HEALTH INSURANCE

COMPANY, a Member of CNO Services, LLC ("Defendant" or "Conseco"),

states as follows:

### JURISDICTION AND VENUE

1.     The Plaintiff, Roger Combs ("Combs"), is a resident of Kentucky,

       residing in Hindman, Kentucky.

2.     The Defendant, Conseco Health Insurance Company, a Member of

       CNO Services, LLC, is an out of state corporation, doing business

in Kentucky.  According to the Kentucky Secretary of State, CNO

Services, LLC, is a foreign limited liability company doing business

throughout the state of Kentucky and is active and in good

standing.

3.   The Defendant's physical address is Conseco Health Insurance

Company, a Member of CNO Services, LLC, 11825 N. Pennsylvania

Street, Carmel, Indiana, 46032.

4.   The Defendant can be served through CSC-Lawyers Incorporating

Service Company, 421 West Main Street, Frankfort, Kentucky

40601.

<u>FACTS COMMON TO ALL COUNTS</u>

5.   Roger Combs ("Combs"), on April 17, 1995, purchased a plan of

insurance described as follows by the Defendant's Certificate of

Insurance:  CANCER PLAN:  LEVEL 200 FAM. CG.

6.   Combs' policy number was 2246912.

7.   Combs' first monthly deduction was made on May 15, 1995, in the

amount of $53.90, for an annual payment of $599.80.

8.   Combs made monthly payments throughout all relevant events in

this Complaint.

9.   The policy contained the following relevant language:

> This policy is a legal contract between the Policyholder and
> Conseco Health Insurance Company.  We agree to insure you
> against loss resulting from specified events due to cancer
> based on the application and in return for premium
> payments.

2

10.     The policy purchased by Combs in April 1995 provided extensive cancer insurance coverage.  Among other items, the insurance provided that payments would be made to the policyholder upon certain events.  These events, included, but were not limited to the following:

(a)  Payment of $1500.00 upon first time diagnosis of internal cancer;

(b) Payments of $300.00 daily for the first ten days and $200.00 daily thereafter per inpatient hospital stays as a direct result of the cancer;

(c) Payments of $200.00 per day for radiation and chemotherapy;

(d) Payments of $162.00 to $9,000.00 for each surgery;

(e) Payments for anesthesia from $41.00 to $2250.00 for each operation;

(f) Payments for blood, plasma, prosthesis; and

(g) Payments of 40 cents per mile for transportation to see a physician.

11.     Combs paid premiums to the Defendant for in excess of 10 years without a claim on his policy. These premiums were paid timely and in accordance with the policy.

12.     Tragically, Combs' wife, Brenda, was diagnosed with breast cancer in September 2005.

3

13.   Combs' wife had surgery and was hospitalized October 13-14, 2005, in Lexington, Kentucky.

14.   Combs and his wife's physician, Colby Atkins, pursuant to the terms of the cancer policy, completed several forms at the end of October and beginning of November 2005, which would reimburse Combs for certain out of pocket expenses associated with his wife's treatment.

15.   These forms included a first occurrence form and a completed claims form.

16.   Combs received an initial payment of $1500.00 on November 9, 2005.

17.   He received a November 5, 2005 letter from the Defendant which indicated while it was paying the "first occurrence" claim, it would only pay the "surgery" claim if more information was sent in concerning the surgery.

18.   Attached to the form which had been sent to the Defendant was the surgical report and pathological report by Dr. Atkins.

19.   During the next seven years, from November 2005-April 2012, Combs and his wife's physicians would submit additional claims and requests for compensation pursuant to the terms of the cancer policy.

4

20.   Despite submitting claims, Combs never received any payment for the services which were to be compensated under the cancer policy.

21.   Combs also submitted transportation costs and likewise, never received any compensation for his transportation costs.

22.   Combs' wife, Brenda, underwent chemotherapy treatment and 46 radiation treatments.

23.   Due to the extensive treatments, Combs' wife suffered a heart attack on May 11, 2009 and was hospitalized at ARH in Hazard, Kentucky, eventually receiving a stent.

24.   Combs' completed the corresponding claim form and, on December 14, 2009, submitted it to the Defendant.

25.   On December 28, 2009, Combs received a letter from the Defendant denying coverage for the claim.

26.   Although Combs' wife recovered from the heart attack, sadly, the breast cancer metasticised to her bones.

27.   On December 29, 2010, Combs completed a form for the "total hip replacement" his wife had due to the bone cancer.

28.   On January 4, 2011, Combs received a letter from the Defendant denying coverage for the claim.

29.   Thereafter, in January 2011, Combs again submitted information in an attempt to receive reimbursement pursuant to the written policy.

5

30.  Combs submitted forms and paperwork on January 6 and 13, 2011.

31.  On January 12, 2011, Combs received a letter that the Defendant was raising his monthly premium from $53.90 a month to $72.05 a month.

32.  Further, in response to Combs' submitted claim form on January 6, 2011, he received a letter from the Defendant, also dated January 12, 2011, that it was denying coverage on his most recent claim because it had no pathology report that diagnosed bone cancer.

33.  A report, however, had been sent which indicated that there was "diffuse bony metastases."

34.  In fact, significant medical records reflect the following progression:

(a) Diagnosis of invasive breast cancer-10/2005;

(b) Discovery of bone metastasis in skull/right femur-11/2005; and

(c) Bony disease progression to include left femur and lumbar spine.

35.  On February 16, 2011, Combs received a letter from the Defendant delaying the servicing of his claim because it needed a statement from a physician informing it of the "brand name" of a certain

6

"zoledronic acid" which had been on physician statements for Combs' wife between 2006 and 2010.

36. Also, on February 16, 2011, Combs received a letter from the Defendant that while it "was anxious to service [his] claim", it was "closing" his claim due to the fact that additional information had not been sent.

37. Additional information was again sent to the Defendant.

38. On March 9, 2011, the Defendant sent another letter, after the letter in which it had announced it was closing the claim, again requesting the name of the "zoledronic acid."

39. On March 23, 2011, the Defendant sent a letter to Combs that while it "was anxious to service [his] claim", it was "closing" his claim due to the fact that additional information had not been sent.

40. On March 24, 2011, the Defendant sent another letter which indicated that certain documents needed to be completed.

41. These documents had already been completed multiple times by Combs and his wife's physicians.

42. Combs' wife died April 24, 2012, at the age of 59, due to invasive cancer.

43. Despite having purchased, and paid for, from the Defendant, a cancer policy described by the Defendant as "CANCER PLAN: LEVEL 200 FAM. CG" with a policy number of 2246912, and

Combs' wife having fought a seven year battle with breast and bone cancer, Combs was not reimbursed (other than the initial diagnosis amount of $1500.00) pursuant to the terms of the cancer policy.

44. The Defendant has breached the terms of the insurance contract.

45. The Defendant has acted in bad faith in failing to reimburse Combs from 2005 to present.

## CAUSES OF ACTION

### COUNT I

#### (BREACH OF CONTRACT)

46. Paragraphs 1 through 45 of the Complaint are incorporated by reference in this count as if set out in full.

47. Combs entered into a contractual arrangement with the Defendant concerning his purchase of, and payment for, a cancer policy.

48. Combs performed all conditions, covenants, promises, duties and responsibilities required of him to be performed in accordance and in conformity with the contractual agreement between the Plaintiff and the Defendant.

49. The Defendant has failed to perform its obligations under the contractual agreement.

50.   As a proximate cause of the Defendant's breach of contract, the Plaintiff has suffered and continues to suffer damages, for which he is entitled to compensation.

### COUNT II

### (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

51.   Paragraphs 1-51 of the Complaint are incorporated by reference in this count as if set out in full.

52.   The Defendant's conduct as set forth herein, is outrageous and beyond the bounds of conduct acceptable in civilized society, and constitutes outrageous conduct and/or intentional infliction of emotional distress under Kentucky law.

53.   As a result of Defendant's willful, malicious and outrageous conduct, Combs has suffered and will continued to suffer emotional distress and mental anguish, all for which he is entitled to recover against the Defendant in such sum as a jury shall find to be fair and reasonable at trial.

54.   Due to the Defendant's willful, malicious and oppressive conduct, Combs is further entitled to recover punitive damages to punish Defendant, pursuant to KRS 411.184 and 411.186, in such sum as a jury shall determine at trial.

### COUNT III

### (BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; KRS 304.12-230—UNFAIR PRACTICES IN HEALTH INSURANCE)

9

55.   Combs reiterates and incorporates as if set forth fully herein the allegations in paragraphs 1-54 above.

56.   The contract between Combs and the Defendant has implied in law a covenant of good faith and fair dealing.

57.   The Defendant breached this covenant of good faith and fair dealing by its treatment of Combs.

58.   KRS 304.12-230 provides describes a number of unfair claims settlement practices which are applicable to this case.

59.   Specifically, the Defendant has violated subsections 2, 3, 4, 5, 6, 12.

60.   As a proximate cause of the Defendant's breach of this covenant of good faith and fair dealing, Combs has suffered and continues to suffer past, present, and future losses, for all of which he is entitled to recover compensatory damages.

<u>COUNT IV</u>

<u>(CIVIL LIABILITY FOR VIOLATION OF STATUTE)</u>

61.   Combs reiterates and incorporates the allegations as set forth in paragraphs 1 through 60 above.

62.   KRS 446.070 provides as follows:

> A person injured by the violation of any statue may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation.

63.   The Defendant's violation of KRS 304.12-230, as set forth in Count

III of this Complaint, has caused the Plaintiff to incur significant

damages and he is entitled to recover an amount in excess of the

jurisdictional limits of this Court.

<u>RELIEF</u>

WHEREFORE, the Plaintiff demands judgment as follows:

1.   Trial by Jury;

2.   Judgment against the Defendant for actual damages, with interest

thereon at the legal rate;

3.   Judgment against the Defendant for general and compensatory

damages, with interest thereon;

4.   Judgment against the Defendant for punitive damages;

5.   An award of costs and reasonable attorney's fees herein, and;

6.   For any and all further relief to which Plaintiff may appear to be

entitled.

BY:   *Cheryl U. Lewis*

Cheryl U. Lewis
Attorney at Law
P.O. Box 1927
Hyden, Kentucky  41749
Telephone:  (606) 672-4200
Facsimile:   (606) 672-4100

COUNSEL FOR THE
PLAINTIFF, ROGER COMBS

11

CI  14-CI-00183
641293





UNITED WE STAND

$ 011.53⁰

02 1P
0000817807     OCT 30 2014
MAILED FROM ZIP CODE 41749



PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

**CERTIFIED MAIL**



7013 0600 0001 4182 6078

CONSECO HEALTH INSURANCE CO,
SERVE: CSC-LAWYERS INCORP. SERCICE CO.
421 WEST MAIN STREET
FRANKFORT KY 40601

RESTRICTED
DELIVERY

405013181̃5 C003

FILED 8
14   COMMONWEALTH OF KENTUCKY
LESLIE CIRCUIT COURT
CIVIL ACTION NO. 14-CI-00183

ROGER COMBS                                                PLAINTIFF

VS.

CONSECO HEALTH INSURANCE
COMPANY, A Member of CNO SERVICES, LLC,        DEFENDANT

_____

## ANSWER OF DEFENDANT

_____

Comes now the Defendant, Washington National Insurance Company, formerly known as Conseco Health Insurance Company (herein sometimes referred to as "Washington National"), by counsel, and for its Answer to Complaint herein states as follow:

### FIRST DEFENSE

The Complaint should be dismissed for failure to state a claim against Washington National upon which relief can be granted.

### SECOND DEFENSE

1.    Washington National admits the allegations in numerical paragraph number 1 of the Complaint.

2.    Washington National admits that it was formerly known as Conseco Health Insurance Company, and that Washington National is now an Indiana Corporation authorized to transact insurance business in Kentucky; Washington National further admits that CNO Services, LLC is an Indiana Limited Liability Company, active and in good standing; but denies that CNO Services, LLC is doing

business in Kentucky, or that Washington National is a "member" of CNO Services, LLC.; Washington National denies the remaining allegations contained in numerical paragraph 2 of the Complaint.

3.    Washington National denies the allegations contained in numerical paragraph 3 of the Complaint and states that its physical address is:   Washington National Insurance Company, 11825 N. Pennsylvania Street, Carmel, Indiana 46032.

4.    Washington National admits the allegations contained in numerical paragraph 4 of the Complaint.

5.    Washington National admits that the Plaintiff purchased the subject policy, which was issued on April 17, 1995; Washington National denies the remaining allegations contained in numerical paragraph 5 of the Complaint on the basis that it has insufficient information to form a belief as to the truthfulness of the allegations contained therein.

6.    Washington National admits the allegations contained in numerical paragraph 6 of the Complaint.

7.    Washington National admits that a premium payment of $53.90 was made on May 15, 1995; Washington National denies the remaining allegations contained in numerical paragraph 7 of the Complaint.

8.    Washington National admits the allegations contained in numerical paragraphs 8 and 9 of the Complaint.

9.    Washington National admits that numerical paragraph 10 (a) to (g) of the Complaint lists certain coverages offered by the subject policy, but does not accurately quote from the policy verbatim and asserts the policy speaks for itself and should be read in

its entirety, and is subject to the terms, conditions and exclusions expressed therein; Washington National denies the remaining allegations contained in numerical paragraph 10 (a) to (g) of the Complaint.

10.   Washington National admits that all relevant premiums were paid, and the policy was in force and effect at all relevant times; Washington National denies the remaining allegations contained in numerical paragraph 11 of the Complaint.

11.   Washington National admits that the Plaintiff's wife was diagnosed with breast cancer; Washington National has insufficient information to form a belief as to the truthfulness of the remaining allegations contained in numerical paragraph 12 of the Complaint and therefore denies the same.

12.   Washington National admits the allegations contained in numerical paragraph 13 of the Complaint.

13.   Washington National admits that claim forms were received on November 7, 2005; Washington National has insufficient information to form a belief as to the truthfulness of the remaining allegations contained in numerical paragraph 14 of the Complaint and therefore denies the same.

14.   Washington National admits receiving a first occurrence form and claim form on or about November 7, 2005; Washington National has insufficient information to form a belief as to the truthfulness of the remaining allegations contained in numerical paragraph 15 of the Complaint and therefore denies the same.

15.   Washington National admits the allegations contained in numerical paragraph 16 of the Complaint.

16.   Washington National admits that it sent a letter to Plaintiff in early

November 2005; Washington National denies the remaining allegations contained in numerical paragraph 17 of the Complaint.

17.   Washington National admits the allegations contained in numerical paragraph 18 of the Complaint.

18.   Washington National admits that claims were completed and received; Washington National has insufficient information to form a belief as to the truthfulness of the remaining allegations contained in numerical paragraph 19 of the Complaint and therefore denies the same.

19.   Washington National admits it has only paid the First Occurrence (Express Pay) benefit of $1,500 under the policy; Washington National denies the remaining allegations contained in numerical paragraph 20 of the Complaint.

20.   Washington National admits that no payments have been made to Combs for transportation costs; Washington National denies that Combs submitted proof of covered transportation expenses and denies the remaining allegations contained in numerical paragraph 21 of the Complaint.

21.   Upon information and belief, Washington National admits that Brenda Combs underwent chemotherapy and radiation treatments; Washington National has insufficient information to form a belief as to the truthfulness of the remaining allegations contained in numerical paragraph 22 of the Complaint and therefore denies the same.

22.   Washington National has insufficient information to form a belief as to

the truthfulness of the allegations contained in numerical paragraph 23 of the Complaint and therefore denies the same.

23.    Washington National admits to receiving a claim form on or about December 16, 2009; Washington National has insufficient information to form a belief as to the truthfulness of the remaining allegations contained in numerical paragraph 24 of the Complaint and therefore denies the same.

24.    Washington National admits sending a letter dated December 28, 2009 regarding a heart attack; Washington National denies the remaining allegations contained in numerical paragraph 25 of the Complaint on the grounds that the letter speaks for itself and should be read in its entirety.

25.    Washington National has insufficient information to form a belief as to the truthfulness of the allegations contained in numerical paragraph 26 of the Complaint and therefore denies the same.

26.    Washington National admits to receiving the claim for total hip replacement on or about January 3, 2011; Washington National has insufficient information to form a belief as to the truthfulness of the allegations contained in numerical paragraph 27 of the Complaint and therefore denies the same.

27.    Washington National admits sending a letter dated January 4, 2011 about the claim for the hip replacement; Washington National denies the remaining allegations contained in numerical paragraph 28 of the Complaint on the grounds that the subject letter speaks for itself and should be read in its entirety.

28.    Washington National admits receiving claim materials from Combs in

January 2011; Washington National denies the remaining allegations contained in numerical paragraph 29 of the Complaint.

29.     Washington National admits receiving claim materials from Combs in January 2011: Washington National denies the remaining allegations contained in numerical paragraph 30 of the Complaint.

30.     Washington National admits that monthly premiums under the Policy increased in 2011; Washington National has insufficient information to form a belief as to the truthfulness of the remaining allegations contained in numerical paragraph 31 of the Complaint and therefore denies the same.

31.     Washington National admits the allegations contained in numerical paragraph 32 of the Complaint.

32.     Washington National admits receiving a report which contained the phrase "diffuse bony metasteses"; Washington National denies the remaining allegations contained in numerical paragraph 33 of the Complaint as it denies that the report was a pathology report within the meaning of the policy.

33.     Washington National has insufficient information to form a belief as to the truthfulness of the allegations contained in numerical paragraph 34 of the Complaint and therefore denies the same.

34.     Washington National admits to sending a letter to Plaintiff requesting information on "zoledronic acid"; Washington National denies the remaining allegations contained in numerical paragraph 35 of the Complaint on the grounds that the subject letter speaks for itself and should be read in its entirety.

35.     Washington National admits to sending a letter to Plaintiff dated February

16, 2011; Washington National denies the remaining allegations contained in numerical paragraph 36 of the Complaint on the grounds that the subject letter speaks for itself and should be read in its entirety.

36.     Washington National has insufficient information to form a belief as to the truthfulness of the allegations contained in numerical paragraph 37 of the Complaint and therefore denies the same.

37.     Washington National admits sending a letter dated March 9, 2011; Washington National denies the remaining allegations contained in numerical paragraph 38 of the Complaint on the grounds that the subject letter speaks for itself and should be read in its entirety.

38.     Washington National admits sending a letter dated March 23, 2011; Washington National denies the remaining allegations contained in numerical paragraph 39 of the Complaint on the grounds that the subject letter speaks for itself and should be read in its entirety.

39.     Washington National denies the allegations contained in numerical paragraphs 40 and 41 of the Complaint.

40.     Upon information and belief, Washington National admits the allegations contained in numerical paragraph 42 of the Complaint.

41.     Washington National denies the allegations in numerical paragraphs 43, 44, and 45 of the Complaint.

42.     Washington National denies any and all allegations contained in numerical paragraph 46 of the Complaint except for those heretofore specifically admitted; Washington National further incorporates its responses to numerical paragraphs 1 to

45 of the Complaint.

43.     Washington National admits the allegations contained in numerical paragraph 47 of the Complaint.

44.     Washington National denies the allegations contained in numerical paragraphs 48, 49, and 50 of the Complaint.

45.     Washington National denies the allegations contained in numerical paragraph 50 of the Complaint.

46.     Washington National denies any and all allegations contained in numerical paragraph 51 of the Complaint except for those heretofore specifically admitted; Washington National further incorporates its responses to numerical paragraphs 1 to 50 of the Complaint.

47.     Washington National denies the allegations contained in numerical paragraphs 52, 53, and 54 of the Complaint.

48.     Washington National  denies any and all allegations contained in numerical paragraph 55 of the Complaint except for those heretofore specifically admitted; Washington National further incorporates its responses to numerical paragraphs 1 to 54 of the Complaint.

49.     Washington National admits the allegations contained in numerical paragraph 56 of the Complaint.

50.     Washington National denies the allegations contained in numerical paragraph 57 of the Complaint.

51.     Washington National denies the allegations contained in numerical paragraph 58 of the Complaint; Additionally, numerical paragraph 58 states a

conclusion of law to which no response is required; Washington National states to the extent an answer is deemed required, Washington National denies it committed any unfair claims settlement practices as to Plaintiff.

52.     Washington National denies the allegations contained in numerical paragraphs 59 and 60 of the Complaint.

53.     Washington National denies any and all allegations contained in numerical paragraph 61 of the Complaint except for those heretofore specifically admitted; Washington National further incorporates its responses to numerical paragraphs 1 to 60 of the Complaint.

54.     Washington National denies the allegations contained in numerical paragraph 62 of the Complaint; Additionally, numerical paragraph 62 states a conclusion of law to which no response is required; Washington National states that to the extent an answer is deemed required, Washington National denies it violated any statute as to Plaintiff.

55.     Washington National denies the allegations contained in numerical paragraph 63 of the Complaint.

56.     Washington National denies any and all allegations contained in the Complaint not heretofore specifically admitted.

## THIRD DEFENSE

Washington National hereby pleads the terms and conditions of the subject policy and all supporting or related documents, and all defenses available and/or promulgated thereunder, and avers further that Plaintiff's claims are barred and/or diminished by operation of the contractual agreement

by and between the parties including any documents and/or application for coverage made a part of the policy.

## FOURTH DEFENSE

The Plaintiff has not suffered any damage, and therefore Plaintiff's Complaint fails to state a claim upon which relief may be granted.

## FIFTH DEFENSE

The Complaint of the Plaintiff should be dismissed for failure of the Plaintiff to mitigate damages, if any, as required by law.

## SIXTH DEFENSE

Washington National pleads the defenses of waiver, fraud, statutes of fraud, privities of contract, laches, and estoppel as a partial and/or complete bar to the claims herein.

## SIXTH DEFENSE

Washington National complied with all applicable laws of the State of Kentucky and/or any other relevant jurisdictions.

## SEVENTH DEFENSE

The actions of Washington National were not the proximate cause of the Plaintiff's alleged damages, if any.

## EIGHTH DEFENSE

Washington National has not breached any duty to the Plaintiff.

## NINTH DEFENSE

Washington National hereby gives notice that it intends to rely upon any

other defense that may become available or appear during the proceedings in this case and hereby reserve its right to amend this Answer to assert any such defense.

## TENTH DEFENSE

Washington National specifically pleads that prejudgment interest cannot be awarded for certain claims.

## ELEVENTH DEFENSE

Washington National adopts by reference all applicable defenses set out in CR 8.03 and CR 12.02 as well as all those which are found at common law or provided by statute.

## TWELFTH DEFENSE

Washington National has exercised good faith in all dealings with the Plaintiff in this matter and expressly denies that it has committed or acted in bad faith toward the Plaintiff, and asserts this as a complete bar to the recovery and maintenance in this action.

## THIRTEENTH DEFENSE

That as a complete and affirmative defense, Washington National asserts each and every term, clause, or provision contained within the Kentucky Revised Statutes and/or Kentucky Administrative regulations pertaining to the administration, language, and issuance of insurance and incorporates those regulations by reference herein as if set out at length herein.

## FOURTEENTH DEFENSE

The Plaintiff's Complaint is barred in whole or in part by operation of the

Kentucky Punitive Damages statute which terms, provision, clauses, and remedies are incorporated hereto and raised as affirmative defenses, as if set out at length herein.

### FIFTEENTH DEFENSE

The Plaintiff's claim under the Unfair Claims Settlement Practices Act at KRS 304.12. et. seq. should be dismissed for failure to state a cause of action thereunder and for failure to meet the prerequisites of such act.

### SIXTEENTH DEFENSE

The Plaintiff's claim for punitive damages should be dismissed as being in violation of the Constitution of the Commonwealth of Kentucky, including, but not limited to Articles 2, 17, and 26.

### SEVENTEENTH DEFENSE

The Plaintiff's claim for punitive damages should be dismissed because an award of punitive damages under Kentucky law, which is not subject to a predetermined limited on the amount of punitive damages that a jury may impose, would violate Kentucky's due process rights guaranteed by the Constitution of the Commonwealth of Kentucky, and violate the excessive fines provision of Section 17 of the Constitution of the Commonwealth of Kentucky.

### EIGHTEENTH DEFENSE

The Plaintiff's claim for punitive damages should be dismissed because any award of punitive damages under Kentucky law without bifurcating the trial and trying all punitive damage issues separately, if and only if, liability on the merits have been found, would violate Kentucky's due process rights

guaranteed by the Fourteenth Amendment of the United States Constitution and the due process provisions of the Constitution of the Commonwealth of Kentucky.

### NINETEENTH DEFENSE

The Plaintiff's claim for punitive damages should be dismissed because a jury, under Kentucky law:

(1)     is not provided standards of sufficient clarity for determining the appropriateness, and the appropriate size, of a punitive damage award;

(2)     is not adequately instructed on the limits or punitive damages imposed by the applicable principles of deterrence and punishment;

(3)     is not expressly prohibited from awarding punitive damages, or determining the amount of an award of punitive damages, in whole or in part, on the basis of invidious discriminatory characteristics, including the residence and wealth of the Defendants;

(4)     is permitted to award punitive damages under a standard for determining liability for punitive damages that is vague and arbitrary, and does not define with sufficient clarity the conduct or mental state that makes punitive damages permissible; and

(5)     is not subject to trial court and appellant judicial review for reasonableness and furtherance of legitimate purposes on the basis of an objective standard.

For the foregoing reasons, such award would violate the due process and equal protection rights guaranteed under the Fourteenth Amendment to the

United States Constitution, and the Constitution of the Commonwealth of Kentucky. The Attorney General of the Commonwealth of Kentucky is hereby put on notice of the challenge to the constitutionality of KRS 411.184, KRS 411.186, and KRS 411.187.

WHEREFORE, the Defendant, Washington National Insurance Company, formerly known as Conseco Health Insurance Company, prays as follows:

(1)    That the Complaint against it be dismissed and held for naught;

(2)    For a trial by jury on all issues so triable;

(3)    Judgement in its favor and against the Plaintiff; and

(4)    For its costs herein expended, and any and all other relief to which it may appear entitled.

LAW OFFICE OF
DEBORAH R. LEWIS, P.L.L.C.
POST OFFICE DRAWER 1179
HAZARD, KENTUCKY  41702
PHONE: (606) 487-1234
COUNSEL FOR DEFENDANT,
WASHINGTON NATIONAL
INSURANCE COMPANY, fka
CONSECO HEALTH CORPORATION


BY:_____
         DEBORAH R. LEWIS

## CERTIFICATE OF SERVICE

This is to certify that the foregoing has been served by mailing a true copy thereof, postage prepaid, on this the 8th day of December, 2014, to the following:

Cheryl Lewis, Esq.
Post Office Box 1927
Hyden, Kentucky 41749

**With the original hand delivered to:**

Leslie Circuit Clerk
Post Office Box 114
Hyden, Kentucky 41749-0114

_____
DEBORAH R. LEWIS